UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LOISANN SINGER, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14 C 7256 |
| | ) | |
| LEWIS UNIVERSITY, a corporation, | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Loisann Singer was 64 years old when she began working for Defendant Lewis University as an administrative assistant in November 2008. She was 69 years old when Defendant fired her in August 2013. Plaintiff asserts that Defendant terminated her employment because of her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a). She also asserts that Defendant breached its collective bargaining agreement (the "CBA") with Plaintiff's local union because it terminated her employment without "just cause." Defendant has moved for summary judgment against Plaintiff on both counts of her complaint,[1] maintaining that it discharged Plaintiff because she violated Lewis' workplace safety policy when she threatened to bring a gun to work. Defendant insists, therefore, that it had just cause to fire Plaintiff and that her termination had nothing to do with her age. For the reasons discussed below, Defendant's motion [33] is granted in part and denied in part.

## BACKGROUND

On August 7, 2013, Plaintiff met with Lori Misheck, Director of Human Resources for Lewis, and Sue Kovach, a union steward, to discuss Plaintiff's concerns about being "picked on and micromanaged" at work. (Def.'s Rule 56.1 Stmt. of Mat. Facts (hereinafter "Def.'s 56.1") [35] ¶ 48.) Plaintiff and Defendant disagree about what Plaintiff said at the meeting. Defendant

---

[1] Plaintiff voluntarily dismissed [16] a third claim that had been asserted against her local union.

maintains that while Plaintiff was discussing her frustrations, she stated that she "understood why a person would bring a gun to work with them." (*Id.* ¶ 49.) Plaintiff denies that she said anything about a gun and insists that she actually said that she "can understand how people snap" when they are humiliated, harassed, and bullied at work. (Pl.'s Rule 56.1 Stmt. of Mat. Facts (hereinafter "Pl.'s 56.1") [42] ¶ 4.) Mischeck states in her deposition that she responded to Plaintiff's statement by reprimanding her, telling Plaintiff that she "cannot say that, especially in an employment situation." (Dep. of Lori Mischeck (hereinafter Mischeck Dep.), Ex. H to Def.'s 56.1 [35-9], at 17:1–5.) According to Mischeck, Plaintiff responded by saying "well I can," by which Mischeck understood Plaintiff to be affirming that she could understand why a person would bring a gun to work. (Mischeck Dep. 31:2–5, 34:20–24.) Regardless of what Plaintiff actually said during her meeting with Mischeck and Kovach, the parties agree that the meeting ended cordially. (Def.'s 56.1 ¶ 54.) The following week, on August 12, 2013, Plaintiff went on medical leave because of a stomach condition. (Dep. of Loisann Singer (hereinafter "Singer Dep."), Ex. 1 to Pl.'s 56.1 [42-1], at 95:5–12.)

Three weeks after Plaintiff's meeting with Mischeck and Kovach, while Plaintiff was still on medical leave, Kovach contacted Graciela DuFour, Associate Vice President for Human Resources for Lewis, to discuss Plaintiff's comments at the August 7 meeting. (Def.'s 56.1 ¶ 55.) Asked about the lack of an immediate response to Plaintiff's alleged statement, Kovach responded that after reflecting on the situation for some time, she realized that what she heard Plaintiff say at the meeting did not "sound like something someone who's in a rational mind should say and then repeat." (*Id.* ¶ 54; Dep. of Sue Kovach (hereinafter "Kovach Dep."), Ex. F to Def.'s 56.1 [35-7], at 35:10–19.) DuFour, Kovach, and Mischeck met that day, August 28, to discuss Plaintiff's alleged statement. (Def.'s 56.1 ¶ 56.) Mischeck recalls that Kovach also told them that she had been on a conference call with Plaintiff and had heard Plaintiff make another reference to bringing a gun to work. (Mischeck Dep. 30:23–31:14.) Kovach herself denies that she was a part of any such call. (Kovach Dep. 45:17–24.) Whether or not Kovach was on the

conference call, DuFour recalls that another union steward named Barb Seppi told DuFour that she was on the call and heard Plaintiff mention that she understood why a person would bring a gun to work, but Seppi "[didn't] think she really meant it . . . [or] meant anything by it." (Dep. of Graciela DuFour (hereinafter "DuFour Dep."), Ex. I to Def.'s 56.1 [35-10], at 16:9–19.) Plaintiff denies that she made such a statement to Seppi. (Singer Dep. 58:19–59:1.)

DuFour determined that Plaintiff should be discharged because her comments violated Lewis' workplace safety policy, and DuFour made that recommendation to her supervisor Robert De Rose, Lewis' Senior Vice President and CFO. (Def.'s 56.1 ¶¶ 60–61.) Lewis' human resources policy manual states: "[I]t is the policy of Lewis University to expressly prohibit any actions or threats of violence by any Lewis employee, against any other employee or student in or about University facilities," and Lewis is committed to "take prompt and remedial action, up to and including immediate dismissal of employment, against any employee who engages in any threatening behavior or acts of violence or who uses any obscene, abusive, or threatening language or gestures." (*Id.* ¶¶ 5–6.) Though Defendant points to a number of alleged deficiencies in Plaintiff's job performance, many of which Plaintiff does not dispute (*id.* ¶¶ 18–47), DuFour stated—and Defendant concedes—that Plaintiff's job performance had nothing to do with the decision to terminate her employment (Pl.'s 56.1 ¶ 13).

DuFour sent Plaintiff an official termination letter on August 29, 2013. (Def.'s 56.1 ¶ 67.) The letter stated that Plaintiff "repeatedly made threatening statements in violation of the University's Workplace Safety Policy, # 6.2070." (*Id.*) Besides the letter, there is no other documentation of Plaintiff's threatening statements in her personnel file. (Pl.'s 56.1 ¶ 9.) After her termination, Plaintiff was permitted to drive onto the Lewis University campus to retrieve her belongings. (Pl.'s 56.1 ¶ 12.) Plaintiff's supervisors, Julie Krahl, Mary Ann Atkins, and Jana Fast, were not informed about Plaintiff's alleged threat until after the initiation of this lawsuit, and each of DuFour, Kovach, Seppi, Atkins, Misheck and Fast acknowledged that they never felt threatened by or scared of Plaintiff while she worked at Lewis (*Id.* ¶¶ 18–19).

Plaintiff claims that she was discriminated against on the basis of her age. She notes that Atkins asked her in the summer of 2013 when she was going to retire (*id.* ¶ 15), but she admits that Atkins' question did not offend her and was just part of "general conversation." (Def.'s 56.1 ¶ 78.) Plaintiff also points out that in an e-mail Kovach wrote shortly after Plaintiff's termination, Kovach described Plaintiff as the intended victim of a "witch hunt" conducted by the "ladies in the library." (*See* Pl.'s 56.1 ¶ 20; Kovach Dep., Ex. 11 to Pl.'s 56.1 [42-11], at 57:19–58:3.) The "ladies in the library" (Plaintiff's three supervisors) were not involved in Plaintiff's termination, however. (*See* Pl.'s 56.1 ¶ 18.) In support of her discrimination charge, Plaintiff identifies Rhonda Richter as a similarly situated younger worker who did not lose her job; Seppi and Krahl agree that Richter was in her 40s at the time of Plaintiff's termination. (Def.'s 56.1 ¶ 79; Pl.'s 56.1 ¶ 22.) In addition to her claim for age discrimination, Plaintiff asserts that her termination violated the CBA between Defendant and Plaintiff's local union. Pursuant to the CBA, Defendant may only discipline or discharge employees for "just cause." (Def.'s 56.1 ¶ 8.)

## DISCUSSION

Summary judgment is appropriate where the moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, a court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Id.* at 255.

## I.    Age Discrimination

A plaintiff bringing an age discrimination claim may establish her claim using either the direct or indirect methods of proof. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 (7th Cir. 2006). Plaintiff in this case relies solely on the indirect method, which is based on the burden-shifting approach articulated in *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Under that approach, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing that (1) she is a member of a protected class, (2) her job performance met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) a similarly situated individual outside the protected class was treated more favorably than the plaintiff. *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). If the plaintiff establishes her prima facie case of discrimination, the employer may articulate a legitimate, nondiscriminatory reason for its action. *Id.* Once the employer articulates such a reason, the plaintiff bears the burden of demonstrating that the reason offered by the employer is mere pretext. *Id.* Evidence that the employer's stated reason is pretextual permits an inference of unlawful discrimination. *Id.*

Because Plaintiff was 69 years old and was discharged from her job, there is no dispute that she has established the first and third elements of her prima facie case. Defendant denies, however, that Plaintiff's job performance met Defendant's legitimate expectations or that she has identified a similarly situated employee who received more favorable treatment than she did. The court discusses each of these elements in turn.

### A.     Legitimate Expectations

According to Defendant, Plaintiff failed to meet its legitimate expectations because she repeatedly violated Lewis' workplace safety policy by threatening to bring a gun to work. Defendant compares this case to *Alexander v. Biomerieux, Inc.*, 485 F. Supp. 2d 924 (N.D. Ill. 2007), in which another court in this district ruled that "[a]n employee who makes threats that she will bring a firearm to her place of employment cannot meet her employer's legitimate expectations of her employment." *Id.* at 931. The evidence of the workplace threat posed by the plaintiff in *Alexander* appears to have been more significant than what Defendant has presented in this case: In *Alexander*, the plaintiff told other employees, on more than one occasion, that she *would* bring a gun in to work and "take care of" people. *Id.* at 929. In addition, there was evidence that other employees found the plaintiff's behavior to be disturbing

and aggressive.  *Id.*  Plaintiff in this case denies that she mentioned bringing a gun to work at all; and even if Defendant's account of what Plaintiff said is accurate, her statement that she "understands" why someone would bring a gun to work is different from a statement that she would do so.  A number of Plaintiff's coworkers said that they never felt scared or threatened by Plaintiff while working with her.  (Pl.'s 56.1 ¶ 19.)  As explained below, however, the court concludes Plaintiff is unable to carry her burden on the other elements of her ADEA claims, so whether she has created an issue of material fact on the legitimate-expectations element is of little consequence.

### B.      Similarly Situated Employee

Defendant also contends that Plaintiff has failed to identify a similarly situated employee to satisfy the fourth element of her prima facie case.  Plaintiff counters that Rhonda Richter, the younger employee who took over Plaintiff's job responsibilities, is such an employee.  Once again, Defendant relies on *Alexander*, where the district court ruled that the plaintiff had not identified a similarly situated employee because she failed to establish that any other employee had engaged in similar conduct to the plaintiff—"i.e., threatening to bring a gun to work."  485 F. Supp. 2d at 932.  Because there is similarly no evidence that Richter made threatening statements or otherwise violated the workplace safety policy, Defendant argues that she cannot be considered a similarly situated employee.  Plaintiff again responds that there is a disputed issue of material fact regarding whether she threatened to bring a gun to work and that she therefore does not have to show that Richter made any similar statement or engaged in any similar conduct.

In circumstances such as this, where an employer's stated reason for terminating an employee is the employee's misconduct, the plaintiff must ordinarily identify a comparator employee who engaged in conduct similar to that alleged against the plaintiff.  *See, e.g.*, *Coleman v. Donahoe*, 667 F.3d 835, 850 (7th Cir. 2012).  A "similarly situated employee" need not be identical to the plaintiff, but there "must be 'enough common factors . . . to allow for a

meaningful comparison in order to divine whether intentional discrimination was at play.'" *Id.* at 847. "An employee who does not have a disciplinary history and performance record similar to the plaintiff's is not 'similarly situated.'" *Brown v. Wyndemere LLC*, 608 F. App'x 424, 425–26 (7th Cir. 2015). Plaintiff has presented no information about Richter apart from her age; Richter's age alone is insufficient to allow the court to engage in a "meaningful comparison" of the two employees. The existence of an issue of material fact concerning whether Plaintiff actually threatened workplace violence does not excuse her from the obligation to identify another employee who allegedly made similar comments or at least engaged in some form of behavior that could have raised security concerns. The current record might permit a jury to infer that Plaintiff's firing was arbitrary or unjustified, but an inference that Plaintiff was fired because of her age would require evidence that a younger employee engaged in similar conduct but received more favorable treatment. *See Scott v. H & R Block Mortgage Corp.*, No. 04-C-373, 2005 WL 3542246, at *15 (E.D. Wis. Dec. 27, 2005) (requiring plaintiff to produce evidence that another employee engaged in conduct similar to the conduct plaintiff *allegedly* engaged in despite plaintiff's contention that he never engaged in any such conduct). Without identifying a similarly situated employee, Plaintiff has failed to establish a prima facie case of age discrimination.

### C. Pretext

Even if the court were to consider Richter as an adequate comparator and rule that Plaintiff had presented a prima facie case of discrimination, Plaintiff's claim would still fail because she has not demonstrated that the reason Defendant offered for firing her was a pretext—that is, a "phony reason" that Defendant concocted to cover up its actual, discriminatory reason. *Visser v. Packer Eng'g Assoc., Inc.*, 924 F.2d 655, 657 (7th Cir. 1991). Defendant has articulated a legitimate reason for firing Plaintiff: statements that Defendant deemed a violation of the workplace safety policy. Plaintiff insists that this proposed reason is inadequate because there exists an issue of material fact regarding whether she actually made

any threatening statement. But Plaintiff's argument misses the point. In determining whether the employer's statement was pretextual, "[t]he question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). Thus it does not matter whether Defendant is mistaken about what Plaintiff said or did; it only matters whether Plaintiff has presented evidence indicating that Defendant is *lying* about the reason it fired her. *See Ineichen v. Ameritech*, 410 F.3d 956, 961 (7th Cir. 2005).

There is some evidence in the record that suggests Defendant did not believe Plaintiff's statement was as "threatening and ominous" as it now contends it was. (Def.'s Br. [34] at 2.) The meeting at which Plaintiff allegedly made her threatening statement ended cordially, for example. (Def.'s 56.1 ¶ 54). In addition, Plaintiff was allowed to continue working after the statement and was allowed to drive onto the university campus to retrieve her belongings after her termination (Pl.'s 56.1 ¶¶ 11–12), and Defendant never informed Plaintiff's colleagues prior to her termination about her alleged statement or otherwise suggest to them that she posed a threat to the workplace. (*Id.* ¶ 18–19.)

Nevertheless, though Defendant may not have viewed Plaintiff as truly dangerous, it has presented evidence demonstrating that her alleged statements were the genuine reason for her termination. Kovach, Plaintiff's union steward, testified at her deposition that she told Plaintiff that she would have to make a note of Plaintiff's alleged statement, for example. (Kovach Dep. at 34:12–14.) And DuFour, the individual who made the decision to terminate Plaintiff, testified that Kovach told her that she felt she had to report Plaintiff's alleged statement because "she would feel really terrible" if she remained silent and something happened at the university. (DuFour Dep. at 14:5–18.) The very fact that there were a number of conversations among upper management about Plaintiff's statement, a fact that Plaintiff does not dispute, suggests that Defendant had a genuine belief that Plaintiff's statement was serious and warranted some type of response. DuFour also testified that she determined that discharge was the prudent

response to Plaintiff's "egregious" policy violation and made that recommendation to her supervisor, additional facts that Plaintiff does not dispute. (Def.'s 56.1 ¶ 61.) Plaintiff has failed to carry her burden to demonstrate that the reason offered by Defendant for her termination was a phony one.

Moreover, even if the court could conclude from the evidence in the record that Defendant's proffered reason was completely fabricated, Plaintiff's claim would still fail because she has not provided *any* evidence that the true reason for Plaintiff's discharge was her age. *Cf. Benuzzi v. Bd. of Educ. of City of Chicago*, 647 F.3d 652, 663-64 (7th Cir. 2011) ("Even if we assume that [the employer] cut her accounts of every incident for which she disciplined [the plaintiff] from whole cloth . . . there is nothing in the record that so much as hints that she did so because of [the plaintiff's] gender."). The closest Plaintiff comes to showing anything like age-based discriminatory animus is her contention that her supervisor Atkins once asked when she was going to retire. (Pl.'s 56.1 ¶ 15.) Atkins, however, played no role in Plaintiff's termination, and Plaintiff admits that Atkins' question did not offend her and was just part of "general conversation." (Def.'s 56.1 ¶ 78.) Plaintiff also argues that she was the victim of a "witch hunt." (Pl.'s 56.1 ¶ 20–21.) But even if that were so, there is no evidence that any of the "ladies in the library" who allegedly perpetrated the witch hunt played any role in her termination, and there is no evidence that they did so because of her age. Thus, without pointing to any "circumstances to support an inference that there was an improper motivation proscribed by law," Plaintiff cannot establish that Defendant's reason for firing her was pretextual. *McGowan v. Deere & Co.*, 581 F.3d 575, 581 (7th Cir. 2009).

## II. Breach of the CBA

In addition to her ADEA claim, Plaintiff asserts a state-law breach-of-contract claim against Defendant, alleging that her termination violated the CBA's provision that employees may only be discharged for "just cause." Defendant argues that it had just cause to fire Plaintiff because she violated the workplace safety policy. Oddly, Defendant has limited its attack on

Plaintiff's breach-of-contract claim to an argument on the merits about whether just cause existed.  Defendant raises no argument, for example, that Plaintiff's CBA-based claim is preempted by federal labor law or is otherwise procedurally barred.  At this late stage in the case, the court considers Defendant to have waived any argument it has failed to raise, and so the court will also confine its analysis to the merits issue of whether Defendant had just cause to terminate Plaintiff's employment.  *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) (arguments not raised in summary judgment brief are considered waived).

Again, the court sees no evidence that Defendant was lying about its reason for firing her to cover up a discriminatory motive.  It is much less clear, however, that Defendant's proferred reason was a good one or that it constituted "just cause."  A jury could reasonably conclude that—as Plaintiff attests—Plaintiff never mentioned bringing a gun to work, or that even if she did, she made no real threat of violence in doing so.  The administrative law judge (ALJ) who concluded that Plaintiff was entitled to unemployment benefits, for example, found Plaintiff's assertion that she made no threat of violence to be credible, especially in light of the fact that Defendant's actions did not comport with the actions of an employer who feared that its employee posed a serious threat to the workplace.  (*See* Administrative Law Judge's Decision, Ex. B to Pl.'s Compl. [1-1], at 2.)  Because a jury could interpret Plaintiff's alleged threat to be a fairly innocuous comment, there is at least an issue of material fact about whether Defendant had just cause to fire her.

Defendant cites only one Illinois case involving an alleged breach of an employment agreement that prohibited terminating an employee other than "for cause."  *See Selch v. Columbia Mgmt.*, 2012 IL App (1st) 111434, ¶ 10, 977 N.E.2d 287, 290 (1st Dist. 2012).  *Selch*, however, is distinguishable.  In that case, the agreement at issue defined "cause" for termination as, among other things, "engaging in misconduct that injures the Company."  *Id.* The court concluded that there was "no ambiguity in [the] facts" about whether the plaintiff behaved in a way that was "insubordinate, disruptive, unruly and abusive" and that caused

injury to the company.  *Id.* at ¶ 47, 977 N.E.2d at 295.  The record was clear that the plaintiff had walked into a conference room where his boss and his company's chief operating officer were sitting and proceeded to unbuckle his pants, pull them down, and "moon" the two men.  *Id.* at ¶ 17, 977 N.E.2d at 290.  Based on these undisputed facts, it was clear that the plaintiff's behavior had harmed the company by "undercutting the authority of plaintiff's bosses . . . and disregarding company policies" prohibiting disruptive, unruly, and abusive behavior in the workplace.  *Id.* at ¶ 47, 977 N.E.2d at 295.  Plaintiff's alleged misconduct in this case is far less clear or immune from dispute.  The CBA, for example, does not provide a definition of "just cause."  If the definition had been the same as that in *Selch*, the court is not certain it could conclude that Plaintiff had injured Lewis as the plaintiff in *Selch* had injured his company.  In short, while a jury would be unable to deny that the plaintiff in *Selch* had "mooned" his bosses, a jury in this case could conclude from the facts currently in the record that Plaintiff actually made no threat to anyone and thus that there was no just cause to terminate her employment.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment [33] is denied with respect to Count One (Breach of Collective Bargaining Agreement) of her complaint and granted with respect to Count Three (Age Discrimination).  Status conference is set for June 7, 2016, at 9:00 a.m.

ENTER:

Dated: May 26, 2016

_____

REBECCA R. PALLMEYER
United States District Judge